Argued September 8, affirmed November 20, 1975

ARV, INC., ET AL, *Appellants, v.* AMFAC
MERCHANDISING CORPORATION,
*Respondent.*
542 P2d 898

*Dale A. Rader,* Portland, argued the cause for appellants. With him on the briefs was David C. Bond, Portland.

*Molly P. Sumner,* Portland, argued the cause for respondent. With her on the brief were James H. Clarke, O. Meredith Wilson, Jr., Mark S. Dodson, and Dezendorf, Spears, Lubersky & Campbell, Portland.

HOLMAN, J.

Plaintiffs brought an action to recover a deficiency in a rental payment claimed to be due them as lessors of real property. Defendant admits withholding the amount sought from its rental payment. However, defendant contends that the amount withheld represents a sum it previously paid to plaintiffs for real property taxes which plaintiffs represented as due under the lease and which defendant did not owe. The parties waived a jury and the trial court found for defendant. Plaintiffs appeal.

The first issue is whether defendant was obligated to pay plaintiffs for the taxes by the terms of the lease. The lease provided for a base yearly rental of $105,000 plus a percentage of defendant's gross sales and, under certain contingencies, an additional amount denominated excess taxes. It is the latter category which is in question here. The lease provided as follows:

"TAXES AND ASSESSMENTS (a) The Lessor agrees to pay any and all real property taxes levied or assessed * * *. The amount of the minimum rental [$105,000 per year] herein required to

be paid is based upon the assumption that the real property taxes to be levied against the leased premises for any fiscal year will not exceed the sum of Forty-five Thousand Dollars ($45,000.00). * * *.

"(b) If the amount of any such *real property taxes so levied* against the demised premises * * * shall exceed the sum of Forty-five Thousand Dollars ($45,000.00), then the Lessee shall pay to the Lessor * * * in addition to the minimum rental herein required to be paid, *the amount of any such excess taxes,* * * * provided * * * the Lessee shall be required to pay * * * only such portion of *said taxes* as is not equal to the percentage rental payable for said year. * * *." (Emphasis supplied.)

A confusing part of the quoted material is in the closing phrase, "as is not equal to the percentage rental payable for said year." However, the parties do not disagree as to the meaning of this language. They assume that it means "as are in excess of the percentage rental payable for said year." The dispute concerns the amount of taxes which is required to be compared with the percentage rental. The controversy is precisely identified in plaintiffs' reply brief wherein it is stated, "plaintiffs [lessors] contend that 'said taxes' simply refers to taxes [all taxes levied], whereas defendant [lessee] contends that 'said taxes' refers to 'excess taxes' [taxes in excess of $45,000]." Accordingly, plaintiffs compare the total real property taxes levied with the percentage rentals to determine defendant's obligation, whereas, for the same purpose, defendant compares the taxes in excess of $45,000 with the percentage rentals. If plaintiffs' interpretation of what is referred to by the term "said taxes" in the next-to-the-last line of the quoted material from the lease is correct, defendant owes plaintiffs a total of $18,830.70 for its part of the real

property taxes for three separate years, since that is the amount by which the total taxes levied exceeded the percentage rentals. If defendant's interpretation is correct, defendant owes nothing, since the taxes in excess of $45,000 for each of the three years did not exceed the percentage rentals in any year.

■ It is our conclusion that the words "said taxes" refer to the most immediately preceding mention of taxes which is "excess taxes" and not to "real property taxes so levied." Therefore, defendant does not owe the sum which it paid to plaintiffs as reimbursement for real property taxes and later deducted from a subsequent rental payment.

It is plaintiffs' further contention, however, that if the language of the lease is construed contrary to their position, they are nevertheless entitled to keep the amount defendant paid to them for taxes because there was an accord and satisfaction of a disputed amount under an ambiguous lease. Defendant made no payment of taxes to plaintiffs during the three years in question and plaintiffs, through their attorney, subsequently sent five separate demand letters for payment by defendant. Thereafter, defendant sent by mail a check to plaintiffs' lawyer for the amount of taxes claimed as owing for the three years. The accompanying letter said only, "Attached is a check for taxes in accordance with your interpretation of your client's lease with Rhodes Western Department Stores." The only evidence concerning whether there was an accord and satisfaction is the five demand letters and the answer quoted above. One of the demand letters makes reference to some sort of a conference, but we know nothing of what occurred there.

■ It is our conclusion that the facts do not demonstrate the existence of an accord and satisfaction. Defendant merely paid that which plaintiffs claimed was due under the terms of the lease. Plaintiffs claim

in their reply brief that they originally demanded a payment for taxes for the year prior to the three years for which defendant paid. This is so, but there is no evidence that their final demand upon defendant was reduced as the result of any negotiation by defendant. 6 Corbin on Contracts 126, § 1278 (1962 ed) states:

"* * * The transaction is never called either an accord or a compromise unless the new performance agreed on is in some respect different from that previously claimed by the obligee. If the claim is for the payment of $100, whether disputed or not disputed by the obligor, the new agreement made by them is called neither an accord nor a compromise unless it calls for a performance that differs in some respect from the payment of $100. If the obligor merely promises to pay $100 and the obligee promises to receive that sum in satisfaction, the validity of the new agreement depends almost wholly upon the validity of the previous claim. If for any reason that claim was invalid ab initio, the new agreement is equally invalid * * *."

Plaintiffs had no valid claim under the lease in the first instance. Any subsequent agreement by defendant to pay plaintiffs' total claim was no better than the claim under the lease. The money having been paid under an invalid claim, it may be recouped.

The judgment of the trial court is affirmed.